ARIDA ANDERSON YOUNG v. CURTIS YOUNG, GEORGE DEWEY YOUNG AND WIFE, JENNIE MAY YOUNG

No. 7828SC38

(Filed 6 November 1979)

1. **Appeal and Error § 6.12— verdict set aside for error of law—order appealable**

   An order setting aside the verdict in plaintiff's favor was appealable where the court specifically stated that the order was entered because of error in failing to submit two issues to the jury.

2. **Equity § 2; Quieting Title § 2.2— laches—insufficiency of evidence**

   In an action to remove cloud from plaintiff's title where she alleged that defendants conveyed certain property to her and her husband, defendants' son, that defendants subsequently executed a deed to the same property to their son alone, and that the son in turn executed a deed to the same property back to defendants, the trial court erred in determining that an issue of laches should be submitted to the jury where defendants did not plead laches and the evidence was insufficient to show laches where it showed only that plaintiff and her husband moved onto the property after it had been deeded to them in 1961 by defendants; a house was begun on the property; shortly after the deed was executed plaintiff and her husband separated and did not thereafter live on the property; between 1961 and 1968 plaintiff and her husband alternately

separated and lived together; by 1965 the house was completed by the male defendant, and defendants moved in and paid for all taxes and repairs; in 1968 plaintiff and her husband were divorced, and plaintiff recorded the 1961 deed from defendants; plaintiff did not have the right to bring this action until her divorce in 1968, as her husband had the right to control the use of the property prior to that time; and plaintiff's delay from 1968 to 1976 in bringing the action benefited rather than harmed defendants, since they enjoyed the use of the property during that time at the cost only of paying for taxes and repairs.

**3. Adverse Possession § 25.2— tenants in common—insufficiency of evidence of adverse possession, ouster**

In an action to remove cloud on title, the trial court erred in determining that an issue as to adverse possession should have been submitted to the jury where defendants conveyed the property in question to plaintiff and her then husband; defendants subsequently executed a deed to the same property to the husband; the husband then executed a deed to defendants; at the time plaintiff and her husband were divorced, the deed previously given to defendants by plaintiff's husband without her joinder operated by way of estoppel to vest defendants with ownership of the husband's one-half undivided interest in the property as tenant in common with plaintiff; because defendants were tenants in common with plaintiff, their possession for a period of less than twenty years could not be adverse to plaintiff absent an actual ouster by plaintiff; and plaintiff did not effect an actual outser of defendants nor were they in possession of the property for the twenty years required to raise a presumption of ouster.

APPEAL by plaintiff from *Friday, Judge.* Judgment filed 15 August 1977 in Superior Court, BUNCOMBE County. Heard in the Court of Appeals 17 October 1978.

Plaintiff brought this action on 23 October 1976 seeking judgment declaring her to be the owner as tenant in common of an undivided interest in described real property and seeking an order striking certain deeds from the public records as constituting clouds on her title. She claims by virtue of a deed dated 22 September 1961 and recorded 26 September 1968 from George Dewey Young and wife, Jennie May Young (hereinafter referred to as the defendants), to plaintiff and her then husband, Curtis Young. Plaintiff and Curtis Young were married in 1954 and were divorced in 1968. Plaintiff alleges that two additional deeds, one from the defendants to Curtis Young alone executed 8 October 1962 and recorded 9 October 1962 and the other from Curtis Young alone back to the defendants dated 16 August 1963 and recorded 5 December 1963, constitute clouds on plaintiff's title, and she prays that these deeds be stricken from the public records.

Young v. Young

The defendants, who are the parents of Curtis Young, filed answer in which they alleged that they executed the 22 September 1961 deed under which plaintiff claims without consideration and solely in order to effect a gift, and they contend that this deed is void *ab initio* because not registered within two years of the time it was made as is required by law. [G.S. 47-26]. As a further defense the defendants allege that they have continuously possessed the land in question under color of title openly, notoriously, and adversely to the claims of the plaintiff for a period of more than seven years.

Plaintiff originally joined Curtis Young as a co-defendant, but prior to trial this action was dismissed as to him upon the court's finding that he had transferred any interest he might have in the subject matter to the defendants by the deed dated 16 August 1963 from him to them. On trial before a jury of the action as between plaintiff and the defendants, the court submitted one issue, which the jury answered as follows:

1. Was the deed dated 22 September, 1961, from George Dewey Young and wife, Jennie May Young, to Curtis R. Young and wife, Arida A. Young, a deed of gift or was it supported by a valuable consideration?

Answer: Valuable Consideration.

After receipt of the verdict, the court on further consideration was of the opinion that as a matter of law the evidence required the court to submit to the jury issues as to laches and adverse possession. Accordingly, the court set aside the verdict and ordered the case returned to the calendar for trial on issues as to laches, adverse possession, and as to whether the deed under which plaintiff claims was a deed of gift or was one for a valuable consideration.

Plaintiff appeals from the order setting aside the verdict and directing a new trial.

*George B. Hyler, Jr., attorney for plaintiff-appellant.*

*John A. Powell, attorney for defendants-appellees.*

PARKER, Judge.

[1] "When a verdict is set aside for error or errors in law, committed during the trial, and not as a matter of discretion, the par-

ty thereby aggrieved may appeal, provided the error or errors are specifically designated." *Akin v. Bank*, 227 N.C. 453, 455, 42 S.E. 2d 518, 519 (1947); *accord, Wells v. Bissette*, 266 N.C. 774, 147 S.E. 2d 210 (1966); *McNeill v. McDougald*, 242 N.C. 255, 87 S.E. 2d 502 (1955); *Powers v. City of Wilmington*, 177 N.C. 361, 99 S.E. 102 (1919). Here, the supposed errors which induced the court's action in setting aside the verdict were specifically stated by the court as (1) error in failing to submit to the jury an issue as to whether plaintiff's claim was barred by laches and (2) error in failing to submit an issue as to whether defendants have acquired title by adverse possession under color of title. The order setting aside the verdict in plaintiff's favor is, therefore, appealable.

The question presented for our review on this appeal is whether the court was correct in its determination that there was error in failing to submit either of the two additional issues to the jury. We hold that under the pleadings and evidence in this case neither of the two additional issues was properly raised for jury determination, that the single issue answered by the jury was determinative of the rights of the parties, and that the court erred in setting aside the verdict. Accordingly, we reverse the court's order, reinstate the verdict, and remand the case for entry of judgment on the verdict rendered.

[2]    First, we hold that there was no error in failing to submit an issue as to laches. In so holding we find it unnecessary to decide whether the present action is in essence one in ejectment and thus so legal in its nature and origin as to make untenable the equitable defense of laches, *see Poultry Co. v. Oil Co.*, 272 N.C. 16, 157 S.E. 2d 693 (1967); *Coppersmith v. Upton*, 228 N.C. 545, 46 S.E. 2d 565 (1948); or whether it is essentially an action to quiet title and thus sufficiently equitable in nature to make the defense here tenable. *See* 65 Am. Jur. 2d, Quieting Title, § 2, p. 142-43, § 57, p. 188-89. Additionally, we find it unnecessary to inquire how far the rule recognizing laches as a defense only against equitable and not against legal claims has been adhered to in the past, *see McRorie v. Query*, 32 N.C. App. 311, 232 S.E. 2d 312 (1977), or how far such a rule should be enforced in the future. This is so because, even if the present action be recognized as one in equity and thus one in which laches could be an appropriate defense, the defendants, for reasons quite apart from the nature of this action as being either legal or equitable, have not shown

that the defense is available to them under the pleadings or evidence in this case.

Laches is an affirmative defense which must be pleaded, G.S. 1A-1, Rule 8(c), and the party pleading it bears the burden of proof. *Taylor v. City of Raleigh*, 290 N.C. 608, 227 S.E. 2d 576 (1976); *Harris & Gurganus v. Williams*, 37 N.C. App. 585, 246 S.E. 2d 791 (1978). G.S. 1A-1, Rule 8(c) expressly provides that "[i]n pleading to a preceding pleading a party shall set forth affirmatively . . . laches . . . . Such pleading shall contain a short and plain statement of any matter constituting an avoidance or affirmative defense sufficiently particular to give the court and the parties notice of the transactions, occurrences, or series of transactions or occurrences, intended to be proved." Here, defendants did not raise an issue of laches in their answer. Nothing in their pleadings gives notice of any transactions or occurrences intended to be proved which would present an issue as to whether plaintiff's claim should be barred by laches. Moreover, even had the defense of laches been properly pled, the evidence was insufficient to raise any issue concerning it. In this regard the evidence shows the following:

Prior to 1961 plaintiff and her husband, Curtis Young, lived and worked in Washington, D.C. Curtis's parents lived in Buncombe County. They expressed the desire that Curtis and plaintiff come back to Buncombe County to live and raise their children, and indicated they would give Curtis and plaintiff a portion of defendants' home tract if they would agree to come back, build a home on the property, and live and raise their children there. In 1961 plaintiff and Curtis moved back to Buncombe County, defendants executed and delivered the deed under which plaintiff now claims, and Curtis and his father began building a house on the property. A basement was constructed of block and covered by sub-flooring, and four rooms and a bath were started in the basement. At that time plaintiff and Curtis intended to stay and live on the property, but shortly after the 1961 deed was executed they separated for the first time and did not thereafter again live on the property. Between 1961 and 1968 plaintiff and Curtis alternatively separated and lived together, but not on the property in question, and during that period four children were born of their marriage, their respective birthdates being 25 March 1962, 8 December 1963, 15 September 1965, and 17 May

1967. In 1968 plaintiff and Curtis were divorced. Plaintiff testified that she kept the 1961 deed in a box among her valuable papers from 1963 until 1968 and that she did not record it until the time of her divorce in 1968, when she was advised by a lawyer to do so. Defendant George Dewey Young testified that "Curtis said Arida [plaintiff] had lost it." Following the initial separation between plaintiff and Curtis, the defendant, George Dewey Young, continued to work on the house, finishing the sub-flooring and building a second story, paying for or doing all of this work himself. In 1965, after the upstairs was completed, defendants moved into the house, where they continued to live until the time of the trial, paying all taxes and making all repairs. Plaintiff did not pay any money for the construction of the house. She did not commence this action to establish her interest in the property until 1976.

In our opinion the foregoing facts furnish no basis for a finding that plaintiff's right to assert her claim in this action is barred by laches. "'Laches' has been defined as such neglect or omission to assert a right, taken in conjunction with lapse of time and other circumstances causing prejudice to an adverse party, as will operate as a bar in equity." 27 Am. Jur. 2nd, Equity, § 152, p. 687. Delay which will constitute laches depends upon the facts and circumstances of each case. "The doctrine of laches applies only when circumstances have so changed during the lapse of time it would be inequitable and unjust to permit the prosecution of the action." *Rape v. Lyerly*, 287 N.C. 601, 620, 215 S.E. 2d 737, 749 (1975). In *McRorie v. Query, supra*, Morris, Judge (Now Chief Judge), discussed the relative importance of lapse of time in connection with laches as follows:

> Lapse of time is not, as in the case when a claim is barred by a statute of limitation, the controlling or most important element to be considered in determining whether laches is available as a defense. The question is primarily whether the delay in acting results in an inequity to the one against whom the claim is asserted based upon " . . . some change in the condition or relations of the property or the parties." 27 Am. Jur. 2d, Equity, § 163, p. 703. Also to be considered is whether the one against whom the claim is made had knowledge of the claimant's claim and whether the one asserting the claim had knowledge or notice of the defendant's

claim and had been afforded the opportunity of instituting an action.

*Id.* at § 162, p. 701.

*McRorie v. Query*, 32 N.C. App. 311, 323, 232 S.E. 2d 312, 320 (1977).

Applying these principles to the facts disclosed by the evidence in the present case, we find no basis for submitting an issue as to laches. To avail themselves of that defense defendants were required to show not merely that plaintiff unreasonably delayed asserting her claim but that they have been so prejudiced by the delay that it would now be inequitable to permit plaintiff to prosecute her action. This they have failed to show. It is true that defendants expended their labor and money to complete the house, but this was accomplished by 1965. At that time plaintiff remained married to defendants' son, her interest in the property was that of a feme tenant by the entirety, and plaintiff's husband rather than the plaintiff had the right to control the use of the property. *Davis v. Bass*, 188 N.C. 200, 124 S.E. 566 (1924). Manifestly plaintiff could not be guilty of laches for failing to bring an action until she had the right to maintain one. Moreover, defendants completed the house fully aware that they had previously executed and delivered the 1961 deed under which plaintiff claims. That they may have believed, mistakenly as it turned out, that the deed was lost and would never be found, furnishes no basis for holding plaintiff guilty of laches.

Finally, such delay in bringing this action after 1968, when as a result of her divorce plaintiff first acquired the right to maintain an action as a tenant in common, benefited rather than harmed the defendants. During that period they enjoyed the use of the property at the cost only of paying for taxes and repairs.

We hold, therefore, that the trial court erred in ruling that the issue of laches should have been submitted to the jury. *McRorie v. Query, supra*, which the trial court apparently felt required submission of the issue, is distinguishable on its facts.

[3] We also hold that no issue as to adverse possession was raised by the evidence in this case. From the date the 1961 deed was delivered until plaintiff and her husband were divorced in 1968, they owned the property as tenants by the entirety. That

status was not changed by the 1962 deed which defendants gave to plaintiff's husband alone, since at the time the 1962 deed was given the defendants no longer had anything to convey. This brings us to a consideration of the effect of the 1963 deed from plaintiff's husband to defendants in which plaintiff did not join. At the time this deed was given the title was still vested in plaintiff and her husband as tenants by the entirety. The estate by the entirety as it existed at common law remains virtually unchanged in North Carolina to this date. Lee, *Tenancy by the Entirety in North Carolina*, 41 N.C.L.R. 67 (1962). [For minor modifications not here pertinent, see G.S. 39-13.3 and 39-13.5] "an estate by the entirety is an estate where the husband and wife are neither 'joint tenants' nor 'tenants in common', since they are considered one person in law. They cannot take the estate by moities but both are seized *per tout and non per my*, thus neither can dispose of any part without the assent of the other, but the whole must remain in the survivor." *Gas Co. v. Leggett*, 273 N.C. 547, 550, 161 S.E. 2d 23, 26 (1968). Although neither the husband nor the wife can separately deal with the estate so as to affect the survivorship rights of the other, "[d]uring the existence of the tenancy by the entirety, the husband has the absolute and exclusive right to the control, use, possession, rents, income and profits of the lands, and he does not have to account to his wife for the rents and income received from the property." *Board of Architecture v. Lee*, 264 N.C. 602, 610, 142 S.E. 2d 643, 648-49 (1965). "In the exercise of this control, use and possession, he may, without joinder of the wife, lease the property, mortgage the property, grant rights-of-way, convey by way of estoppel—qualified in all these instances by the fact that the wife is entitled to the whole estate unaffected by his acts if she survive him." *Gas Co. v. Leggett, supra*, at p. 551, 161 S.E. 2d at pp. 26-27. Thus, when plaintiff's husband, who was then the sole usufructuary, executed the 1963 deed to the defendants, the deed was effective to transfer his rights to the possession, and it is manifest, that defendants' possession of the property under that deed during the period before plaintiff and her husband were divorced in 1968 could not have been adverse to plaintiff's survivorship rights nor could the 1963 deed serve to defeat those rights. *Harris v. Parker*, 17 N.C. App. 606, 195 S.E. 2d 121 (1973).

Upon their divorce in 1968, the estate by the entirety of plaintiff and her former husband was converted into a tenancy in

common. *Davis v. Bass, supra, McKinnon v. Caulk*, 167 N.C. 411, 83 S.E. 559 (1914). Where the husband conveys the land held by him with his wife as tenants by the entirety by warranty deed without the joinder of the wife, the conveyance may operate by way of estoppel. *Harrell v. Powell*, 251 N.C. 636, 112 S.E. 2d 81 (1960); *Hood v. Mercer*, 150 N.C. 699, 64 S.E. 897 (1909). Therefore, at the time the 1968 divorce was entered, the 1963 deed previously given to defendants by plaintiff's husband without her joinder operated by way of estoppel to vest defendants with ownership of Curtis Young's one-half undivided interest in the property as tenant in common with the plaintiff.

Because defendants were tenants in common with the plaintiff, their possession for a period of less than twenty years could not be adverse to the plaintiff, absent an actual ouster of the plaintiff. This is so because a tenant in common has the right to possess the property and is presumed to be holding under his true title. *Winstead v. Woolard*, 223 N.C. 814, 28 S.E. 2d 507 (1944). The possession of a tenant in common is not considered adverse to his cotenant unless he ousts his cotenant "by some clear, positive, and unequivocal act equivalent to an open denial of his [cotenant's] right." *Dobbins v. Dobbins*, 141 N.C. 210, 214, 53 S.E. 870, 871 (1906). If the tenant in common gives a deed which purports to convey the whole estate, the grantee therein merely steps into his grantor's shoes. As a result, the deed is not color of title as against the grantor's cotenants, and seven years' possession under the deed will not ripen title to the whole estate in the grantee. *Cox v. Wright*, 218 N.C. 342, 11 S.E. 2d 158 (1940). "In the absence of *actual ouster*, the ouster of one tenant in common by a cotenant will not be presumed from an exclusive use of the common property and the appropriation of its profits to his own use for a less period than twenty years . . . ." *Morehead v. Harris*, 262 N.C. 330, 343, 137 S.E. 2d 174, 186 (1964). When these principles are applied in the present case, it can be seen that the evidence presented at trial did not raise the issue of adverse possession. The defendants have not effected an actual ouster of the plaintiff and were in possession of the property less than the twenty years required to raise a presumption of ouster.

The order of the trial court setting aside the verdict is reversed, the verdict is reinstated, and this cause is remanded for

entry of judgment on that verdict declaring plaintiff to be a tenant in common with a one-half undivided interest in the property.

Reversed and remanded.

Judges MARTIN (Robert M.) and MARTIN (Harry C.) concur.